UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELLE C. FIGUEROA BRADLEY,<br><br>      Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>      Defendant. | Case No. ED CV 07-1660 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI"). Plaintiff claims that the ALJ erred by: 1) finding that she could perform past relevant work as a cook, manager, and animal caretaker; 2) failing to consider a friend's statement about her condition; 3) improperly rejecting a state agency physician's findings about the severity of her mental impairment; 4) improperly rejecting her treating psychologist's opinion; and 5) failing to pose a complete hypothetical question to the vocational expert. (Joint Stip. at 3-4, 10-11, 13-14, 16-17, 20-21.) For the following reasons, the Agency's decision is affirmed.

## II. BACKGROUND

On December 6, 2004, Plaintiff applied for SSI, alleging that she had been unable to work since January 30, 2004, due to carpal tunnel syndrome, lower back pain, depression, fibromyalgia, and arthritis. (Administrative Record ("AR") 33, 79, 89.) The Agency denied the application initially and on reconsideration. (AR 34-39, 44-48.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 27-29.) On January 25, 2007, Plaintiff appeared with counsel at the hearing and testified. (AR 420-46.) On March 16, 2007, the ALJ issued a decision denying benefits. (AR 13-21.) After the Appeals Council denied Plaintiff's request for review, (AR 5-7), she commenced this action.

## III. ANALYSIS

### A. The ALJ's Finding That Plaintiff Could Perform Her Past Relevant Work

In her first claim, Plaintiff contends that the ALJ's finding that she could perform her past relevant jobs as cook and manager was not supported by the vocational expert's testimony and that the vocational expert's testimony that she could perform the job of animal caretaker was erroneous. (Joint Stip. at 3-4.) The Agency does not challenge Plaintiff's argument that the ALJ erred as to the cook and manager jobs, but argues that any error was harmless because he correctly concluded that Plaintiff could perform the job of animal caretaker.[1] (Joint Stip. at 4-10.) For the reasons explained below,

---

[1] The Agency needlessly passed over the opportunity to gain immediate credibility with the Court by setting forth at the outset of its five-page argument on this issue that the ALJ had erred when he found that Plaintiff could perform her past jobs as cook and manager. Instead, the Court had to wade through the government's argument

1  the Court finds that the ALJ erred when he concluded that Plaintiff
2  could perform her past work as a cook and as a manager but did not err
3  when he found that Plaintiff had the mental capacity to perform the
4  job of animal caretaker.
5      The vocational expert testified that, based on Plaintiff's
6  residual functional capacity (as set forth by the ALJ), Plaintiff
7  could not perform the jobs of cook or manager.  (AR 444.)  The ALJ
8  found that she could, purportedly relying on the vocational expert's
9  testimony.  (AR 20.)  This finding was erroneous.
10     As for the ALJ's finding that Plaintiff had the mental capacity
11 to perform the job of animal caretaker, the Court concludes that this
12 finding was not erroneous.  The ALJ found that Plaintiff had the
13 mental capacity to perform jobs that involve simple, non-complex work
14 tasks.  (AR 16.)  He concluded that, therefore, Plaintiff could
15 perform the job of animal caretaker, which requires a reasoning level
16 of two.  Plaintiff contends that this was error.  She argues that
17 someone who is limited to performing simple, non-complex tasks is not
18 capable of performing work that requires level-two reasoning.  (Joint
19 Stip. at 3-4.)  The Court rejects this contention.
20     The ability to perform simple, non-complex work tasks is
21 consistent with reasoning level two.  *See*, *e.g.*, *Hackett v. Burnett*,
22 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that level-two reasoning
23 appears more consistent with "simple and routine work tasks"); *Meissl*
24 *v. Barnhart*, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005) (holding
25 that vocational expert's testimony that claimant who was restricted to

---

27 regarding the animal caretaker job until, in the second-to-last
   paragraph, the Agency apparently made that concession.  (Joint Stip.
28 at 9.)

simple and repetitive tasks could perform job requiring a reasoning level of two was not inconsistent with the DOT). Because Plaintiff can perform simple, non-complex tasks, she can perform jobs that require level-two reasoning. For this reason, the Court finds that the ALJ did not err in concluding that Plaintiff had the mental capacity to perform the job of animal caretaker.[2]

B. <u>Lay Witness Testimony</u>

In her second claim of error, Plaintiff contends that the ALJ failed to consider a report completed by her friend Jamie Yodes on January 9, 2005. (Joint Stip. at 10-11.) In that report, Yodes noted that she was with Plaintiff three or four days a week. (AR 62.) Yodes reported that Plaintiff had "really bad insomnia and usually her hands wake her up due to pain"; that she has pain dressing and washing; that she cooks less frequently now; that she could only use one hand; and that she could walk no more than two blocks at a time. (AR 63, 64, 67.) Yodes believed that Plaintiff could not work because "her left hand is still healing," and she had "fallen into a deep depression." (AR 69.) In his decision, the ALJ stated that he had

---

[2] The Court questions whether this job qualified as past relevant work because Plaintiff was an unpaid volunteer and volunteer work is generally not considered past relevant work, which is usually restricted to substantial gainful activity. *See*, *e.g.*, *Dotson v. Shalala*, 1 F.3d 571, 576 n.5 (7th Cir. 1993) ("[S]ubstantial but non-remunerative volunteer work would fall short of [substantial gainful activity] because people do not normally volunteer their services for pay or profit.") In fact, the ALJ found that Plaintiff had not performed substantial gainful activity since the alleged onset date, and all of her work in the animal shelter was performed after the alleged onset date. (AR 15, 425.) But the Court is not free to comb through the record looking for potential errors not raised by either side and raise them *sua sponte*. Plaintiff and Defendant are represented by counsel in this case and counsel dictate the parameters of the Court's review.

"generously considered . . . witness testimony," but neither addressed Yodes' testimony specifically nor offered reasons for discounting it. (AR 19.)

The ALJ's failure to discuss Yodes' testimony was error. An ALJ is required to consider lay witness statements and may only reject them for reasons that are germane to the witness. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (holding that ALJ must give germane reasons to discount written testimony and affidavits of lay witnesses).

The Agency argues that the ALJ was not required to discuss Yodes' testimony in detail because it was not "competent" evidence. (Joint Stip. at 12.) This argument is rejected. It is well-established that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19. Except in rare circumstances, like when a lay witness is offering a medical opinion, a lay witness's statements about her observations of a claimant are competent evidence and must be expressly considered by the ALJ.

The Agency contends that the error was harmless. In this context, an error is harmless if the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The Agency argues that the error was harmless because Yodes' testimony was "cumulative of Plaintiff's own subjective statements, which the ALJ properly rejected." (Joint Stip. at 12-13.) This argument is misplaced. The Court is not tasked with trying to figure

out whether there were legitimate--though unidentified--reasons for rejecting Yodes' statement.  Under *Stout*, the Court assumes that there were no legitimate reasons for rejecting the testimony and assumes that the ALJ has accepted it as true.  The Court then analyzes what the outcome of the case would have been had the statement been fully credited by the ALJ.  454 F.3d at 1056.

Applying this standard, the Court concludes that the error was harmless.  Yodes submitted her testimony just one month after Plaintiff underwent carpal tunnel release surgery on her left hand in December 2004.  (AR 136, 430.)  At the administrative hearing in 2007, Plaintiff testified that she had achieved "good results" from the surgery, and that her left hand was better.  (AR 430.)  Moreover, Plaintiff testified that she had been volunteering for six months at the Morongo Basin Humane Society for between five to eight hours a day, five days a week, doing such chores as cleaning cat boxes, refilling food and water, playing with the animals, and occasionally helping the staff.  (AR 424-26.)  In light of Plaintiff's own testimony regarding her physical condition and the doctors' findings regarding her emotional condition (which will be discussed infra), the Court finds that no reasonable ALJ would have reached a different disability determination based on Yodes' statements.  Thus, this claim does not warrant remand.

### C. The Reviewing Physician's Opinion

In her third claim of error, Plaintiff contends that the ALJ improperly rejected a mental residual functional capacity assessment performed by Dr. K.L. Loomis, a state agency reviewing physician. (Joint Stip. at 14.) This claim does not warrant remand or reversal.

Dr. Loomis determined that Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; work in coordination with others without being distracted by them; interact appropriately with the general public; and get along with coworkers and peers. (AR 167-68.) Despite these limitations, Dr. Loomis opined that Plaintiff could perform "detailed, non-complex tasks in a non-public setting." (AR 169.) The ALJ adopted the functional limitations found by Dr. Loomis, finding that Plaintiff could perform simple, non-complex tasks with occasional contact with the general public. (AR 16, 169.) Thus, the ALJ did not reject Dr. Loomis' findings and was not required to explain why he did. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (holding that "[c]lear and convincing reasons are not required . . . when there is no conflict" between the ALJ's reasoning and physician's opinion).

### D. The Treating Psychologist's Opinion

In her fourth claim of error, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of her treating psychologist Robert Karman. The Court rejects this contention for the reasons explained below.

As a general rule, a treating doctor's opinion is given priority over the opinions of non-treating doctors. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). To reject a treating doctor's opinion that

is contradicted by another doctor's opinion, an ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for doing so. *Id.*

In May 2005, Dr. Karman completed a "Short-Form Evaluation for Mental Disorders," rating as "poor" Plaintiff's ability to understand, remember, and carry out complex instructions; maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in a work setting."  (AR 206.)  He found that her ability to understand, remember, and carry out simple instructions was "fair."  (AR 206.)  According to that form, Dr. Karman had first examined Plaintiff five months earlier, in January 2005.  (AR 204.)

The ALJ gave "little weight" to Dr. Karman's opinion because: 1) it was "[in]consistent with his own treatment notes in which he states that he is assisting her with career planning and discusses her successful performance of volunteer work with her. . . . [and] her response to clinical intervention [was] 'good'";[3] 2) it was not supported by clinical data or other objective findings; and 3) it was inconsistent with the opinions of the state agency psychiatrists who evaluated Plaintiff and reviewed her medical records.  (AR 19.)

The record supports the ALJ's findings.  Dr. Karman's short-form evaluation was completed on May 23, 2005.  (AR 206.)  His subsequent treatment notes (from June 2005 to January 2007) show that Plaintiff's

---

[3] The ALJ wrote "consistent," but from the context it is clear that he intended to write "inconsistent."  (AR 19.)

condition materially improved.  For example, on March 23, 2006, Plaintiff spoke of returning to work; in May 2006, she and Dr. Karman discussed a plan for volunteer work and she began training for that work; and, in July 2006, they discussed her "vocational directions," specifically, working with animals, and identified her need to develop assertiveness.  (AR 220, 223.)  In October 2006, Dr. Karman noted that her response to intervention was "good."  (AR 216, 217.)  In December 2006, he noted that "[Plaintiff] admits that she really doesn't want to work unless she has to," and in January 2007, he opined that Plaintiff "[u]ltimately is employable but people contact will have to be limited in job desc[ription]."  (AR 388, 389.)

Though Dr. Karman's treatment notes also reflect that Plaintiff continued to have problems interacting with people, the ALJ was entitled to rely on her improved condition as evidenced by Dr. Karman's notes as a basis for rejecting Dr. Karman's earlier, more severe restrictions.  *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that discrepancies between treating physician's statement and clinical notes was clear and convincing reason to reject doctor's opinion).

The ALJ also rejected Dr. Karman's opinion because it was not supported by clinical data or other objective findings.  This, too, is a legitimate reason for rejecting a treating doctor's opinion and is supported by the record.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings ...") (internal citations omitted).  Though Dr. Karman reported in the May 2005 assessment form that he had first examined Plaintiff in January

2005 and had had weekly visits with her since then, there were no records to support this claim and no objective evidence to support his diagnoses. In fact, the chart notes that were submitted by Dr. Karman begin in June 2005, not January or even May. (AR 414.) Thus, not only was the ALJ correct in rejecting Dr. Karman's opinion because it was not supported by objective evidence, it appears from this record that Dr. Karman did not begin to treat Plaintiff until after he filled out the form in May 2005, further undermining his opinion.

Finally, the ALJ noted that Dr. Karman's opinion that Plaintiff could not work was in conflict with the findings of examining psychiatrist Kent Jordan who found that, "if motivated," Plaintiff could perform detailed and complex tasks, maintain regular attendance, and complete a normal workweek. (AR 141.) This, too, was a legitimate reason for discounting Dr. Karman's opinion and is supported by the record. *Magallenes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989). For these reasons, this claim does not warrant remand or reversal.

E. The Hypothetical Question

In her fifth claim of error, Plaintiff contends that the ALJ failed to pose a complete hypothetical question to the vocational expert because he did not incorporate the limitations found by Dr. Loomis or Dr. Karman. (Joint Stip. at 20-21.) This claim is without merit.

As discussed above, the ALJ's functional limitation determination was consistent with Dr. Loomis' findings. Furthermore, because the ALJ rejected Dr. Karman's assessment, he was not required to include Dr. Karman's limitations in his hypothetical question to the vocational expert. *See Batson,* 359 F.3d at 1197 (holding that ALJ was

not required to incorporate treating physicians' limitations in hypothetical question to vocational expert were ALJ rejected the limitations).

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED: June  25 , 2009.

　　　　　　　　　　　　　　　　　　　　　/s/ Patrick J. Walsh
　　　　　　　　　　　　　　　　　　　　　PATRICK J. WALSH
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BRADLEY, A 1660\Memo_Opinion.wpd

11